UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22275-CIV-ALTONAGA/Reid

**ALEXIS NICOLE GONZALEZ**,

    Plaintiff,
v.

**CHRISTOPHER JOHNSON**, *et al.*,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** came before the Court upon Defendants, Christopher Johnson, Darien Rodriguez, Stephanie Fernandez (collectively, "the Officers"), and City of South Miami, Florida's ("the City[']s]") Motion for Summary Judgment [ECF No. 34]; and Plaintiff, Alexis Nicole Gonzalez's Motion for Partial Summary Judgment [ECF No. 35]. Defendants and Plaintiff filed their respective Responses [ECF Nos. 43, 45], followed by Replies [ECF Nos. 51–52]. The Court has carefully considered the record, the parties' written submissions, and applicable law.[1]

**I. BACKGROUND**

This civil rights action arises from Plaintiff's arrest on September 14, 2021, at Whitt's Tow Away, Inc. ("Whitt's"), following a joint undercover towing operation conducted by the South Miami and Coral Gables Police Departments. (*See* Defs.' SOF ¶¶ 10–31; Pl.'s Resp. SOF ¶¶ 10–31; Pl.'s SOF ¶¶ 89–90; Defs.' Resp. SOF ¶¶ 88–99). The operation was prompted by a series of

---

[1] The parties' factual submissions include Defendants' Statement of Material Facts ("Defs.' SOF") [ECF No. 33]; Plaintiff's Statement of Undisputed Material Facts ("Pl.'s SOF") [ECF No. 36]; Exhibits to Plaintiff's Statement of Undisputed Material Facts [ECF No. 32] ("Pl.'s SOF Exs."); Defendants' Response to Plaintiff's Statement of Undisputed Material Facts ("Defs.' Resp. SOF") [ECF No. 42]; Plaintiff's Response . . . Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Resp. SOF") [ECF No. 44]; and Defendants' Reply to Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ("Defs.' Reply SOF") [ECF No. 50].

consumer complaints alleging that Whitt's refused to release vehicles to authorized agents or actual owners without a power of attorney or notarized authorization; at times accepted only cash despite a legal obligation to accept two forms of payment; and imposed improper or inflated storage fees — all of which led the South Miami Police Department to suspect that Whitt's was intentionally retaining vehicles to maximize charges. (*See* Defs.' SOF ¶¶ 10–15; Pl.'s Resp. SOF ¶¶ 10–15). An audit by the Miami-Dade County Consumer Protection Division discovered multiple violations confirming the complaints, which Whitt's purportedly attempted to address through a formal Assurance of Voluntary Compliance. (*See* Defs.' SOF ¶¶ 16–18; Pl.'s Resp. SOF ¶¶ 16–18). Despite these efforts, complaints persisted, prompting law enforcement to conduct the September 14, 2021 sting operation. (*See* Defs.' SOF ¶¶ 19, 21; Pl.'s Resp. SOF ¶¶ 19, 21).

As part of the operation, two undercover Coral Gables Officers parked rental vehicles in the parking lot of a BrandsMart store and waited for them to be towed. (*See* Defs.' SOF ¶¶ 26–31, 33; Pl.'s Resp. SOF ¶¶ 26–31, 33). Whitt's, which was under contract with BrandsMart to remove unauthorized vehicles from the premises, towed one of the cars at 11:28 a.m. (*See* Pl.'s SOF ¶¶ 3, 6–8; Defs.' Resp. SOF ¶¶ 3, 6–7, 8 (disputed as phrased)). After waiting approximately 35 minutes — as contemplated by the operational plan — one of the undercover Officers left the BrandsMart lot and arrived at Whitt's' tow yard at approximately 1:15 p.m., where he requested the vehicle's release. (*See* Defs.' SOF ¶¶ 34–35; Pl.'s Resp. SOF ¶¶ 34 (disputed on other grounds), 35).

Plaintiff — then a Whitt's employee — was responsible for receiving tow manifests from Whitt's tow truck drivers, reporting each tow to the Miami-Dade Police Department, recording the time of the report along with the identification number ("position") of the officer who received the call, and placing the completed manifest in the impound basket to await the customer's arrival.

(*See* Defs.' SOF ¶ 9; Pl.'s Resp. SOF ¶ 9 (disputed on other grounds)). On the day of the sting operation, Plaintiff received the tow manifest from the tow truck driver, reported the tow to Miami-Dade Police at 12:00 p.m., processed the paperwork, and asked the undercover Officer for a copy of the vehicle's rental agreement. (*See* Pl.'s SOF ¶¶ 1, 7–9, 11–12, 25, 28, 40; Defs.' Resp. SOF ¶¶ 1 (disputed on other grounds), 7, 8 (disputed as phrased), 9 (disputed on other grounds), 11, 12 (disputed on other grounds), 25, 28, 40). When the Officer said he could not produce one — explaining that a friend had rented the car and he did not know the company — Plaintiff declined to release the vehicle, stating that mere possession of a car key was not sufficient to establish lawful custody. (*See* Pl.'s SOF ¶¶ 20, 22–30; Defs.' Resp. SOF ¶¶ 20 (disputed as phrased), 22 (disputed on other grounds), 23 (disputed as phrased), 24–29, 30 (disputed as phrased)).

After Plaintiff declined to release the vehicle, the undercover Officer stepped outside and called the South Miami Police Department. (*See* Defs.' SOF ¶ 40, Pl.'s Resp. SOF ¶ 40; Pl.'s SOF ¶ 31; Defs.' Resp. SOF ¶ 31). Officers Rodriguez and Johnson arrived at Whitt's shortly thereafter. (*See* Defs.' SOF ¶¶ 43, 47; Pl.'s Resp. SOF ¶¶ 43, 47; Pl.'s SOF ¶¶ 32–35; Defs.' Resp. SOF ¶¶ 32–35). Plaintiff informed them that she could not confirm the undercover Officer's right to the vehicle, noting the absence of a rental agreement and the fact that the vehicle had been rented by someone else. (*See* Defs.' SOF ¶ 49; Pl.'s Resp. SOF ¶ 49; Pl.'s SOF ¶¶ 36–37; Defs.' Resp. SOF ¶¶ 36 (disputed as phrased), 37). She then provided Officer Rodriguez with the tow manifest. (*See* Defs.' SOF ¶ 54; Pl.'s Resp. SOF ¶ 54).

Upon review, Officer Rodriguez noted that the tow manifest was missing key entries, including the "towed to" location and the time the tow was requested.[2] (*See* Defs.' SOF ¶¶ 54–

---

[2] The manifest produced later in discovery included these fields filled in — despite being blank at the time of the arrest. (*See* Defs.' SOF ¶¶ 58–59; Pl.'s Resp. SOF ¶¶ 58–59).

57, 69; Pl.'s Resp. SOF ¶¶ 54–57, 69). These omissions were visible on the face of the form and confirmed by body-worn camera footage. (*See* Defs.' SOF ¶¶ 58, 69; Pl.'s Resp. SOF ¶¶ 58, 69).

Officers Rodriguez and Johnson advised Plaintiff that she would be arrested if she continued to withhold the vehicle, but she did not agree to release it. (*See* Defs.' SOF ¶¶ 74–75; Pl.'s Resp. SOF ¶¶ 74–75). The Officers then placed her in handcuffs and took her into custody. (*See* Pl.'s SOF ¶¶ 60–61; Defs.' Resp. SOF ¶¶ 60–61). Officer Fernandez, also present at the scene, later prepared the arrest affidavit. (*See* Defs.' SOF ¶¶ 81–82; Pl.'s Resp. SOF ¶¶ 81–82).

Plaintiff maintains that she lacked discretion to release the car and acted solely at the direction of her supervisor, Carmelo Gonzalez, who had instructed her not to proceed until ownership could be confirmed with the rental company. (*See* Pl.'s SOF ¶¶ 4, 46–52; Defs.' Resp. SOF ¶¶ 4, 46, 47 (disputed), 48, 49–52 (all disputed)). She asserts that she had no authority to override those instructions. (*See* Pl.'s SOF ¶ 52; Defs.' Resp. SOF ¶ 52 (disputed)).

Plaintiff brings two claims: a state-law claim for false arrest and imprisonment against the City ("Count I"), and a Section 1983 claim against the Officers for violating her Fourth Amendment rights ("Count II"). (*See* Compl. [ECF No. 1] ¶¶ 45–53). Defendants seek summary judgment on both claims. (*See generally* Defs.' Mot.). As to Count I, they argue Plaintiff's arrest was supported by actual probable cause under Florida law, thus defeating Plaintiff's false arrest claim against the City. (*See id.* 3–9). As to Count II, Defendants assert the Officers are entitled to qualified immunity because, at a minimum, the Officers were acting within the scope of their discretionary authority and had arguable probable cause to arrest Plaintiff. (*See id.* 9–18).

For her part, Plaintiff seeks partial summary judgment, contending there was no probable cause justifying her arrest (Count I) and further, that the undisputed facts confirm a constitutional violation occurred (Count II). (*See generally* Pl.'s Mot.).

4

## II.  LEGAL STANDARDS

***Summary Judgment.***  "A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a).  "The principles governing summary judgment do not change when the parties file cross-motions for summary judgment[,]" as is the case here. *T–Mobile S. LLC v. City of Jacksonville*, 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008) (alteration added).

Summary judgment is appropriate when the record — including the pleadings, discovery and disclosure materials, and any affidavits — reveals no *genuine* dispute of any *material* fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a), (c).  A fact is "material" if it might affect the outcome of the case under the governing law, and a dispute is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  In applying this standard, "the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (citation omitted).

If the moving party bears the burden of proof on the relevant issue at trial, it can meet its summary judgment burden only "by presenting *affirmative* evidence showing the absence of a genuine issue of material fact — that is, facts that would entitle it to a directed verdict if not controverted at trial." *Emery v. Talladega Coll.*, 169 F. Supp. 3d 1271, 1280–81 (N.D. Ala. 2016) (emphasis in original; citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)), *aff'd*, 688 F. App'x 727 (11th Cir. 2017).  With that showing made, the moving party "is entitled to summary judgment unless the non-moving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Fitzpatrick*, 2 F.3d at

1115 (alteration adopted; quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991)).

In contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim; and (2) showing the court there is insufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-14208-Civ, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015) (citations omitted). "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite 'to . . . materials in the record' or show 'that the materials cited do not establish the absence or presence of a genuine dispute.'" *Id.* (alteration added; quoting Fed. R. Civ. P. 56(c)(1)). When considering cross-motions for summary judgment, the court views the facts in the light most favorable to the non-moving party on each motion. *See Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012) (citations omitted).

***Qualified Immunity.*** Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (alteration added; quotation marks omitted; quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To be entitled to qualified immunity's protections, a government official must demonstrate that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (citations and

6

quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted), *abrogated in part on other grounds by Pearson*, 555 U.S. 223; *see also Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (citations omitted). A plaintiff can show that qualified immunity is not appropriate by establishing that (1) the defendant's conduct violated her constitutional rights, and (2) the constitutional violation was clearly established at the time. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citations and quotation marks omitted). These two requirements may be addressed in any order. *See id.* (citing *Pearson*, 555 U.S. at 236).

The plaintiff "bear[s] the burden of showing that the federal rights allegedly violated were clearly established." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (alteration added; citation omitted). To satisfy the "clearly established" requirement, a law "should not be defined 'at a high level of generality[,]'" and the "clearly established law must be particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (alteration added; quotation marks and citations omitted). There are three ways a plaintiff may show a right is clearly established:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (quotation marks and citation omitted).[3] Even if the plaintiff demonstrates that, at a general level, a clearly established right may be at stake, the necessary particularization requires the Court to examine "whether the defendant's

---

[3] In the Eleventh Circuit, if caselaw is used, only decisions of the Supreme Court, Eleventh Circuit, and the pertinent state's highest court — here, the Florida Supreme Court — can clearly establish the law for qualified immunity purposes. *See McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) (citation omitted).

7

conduct was nonetheless objectively reasonable in light of that [clearly established] right." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1283 (11th Cir. 2008) (alteration added; quotation marks and citation omitted).

### III.  DISCUSSION

**A.  Count I — State-law False Arrest Claim (Against the City)**

Florida law recognizes liability for false arrest by a law enforcement officer. *See Lester v. City of Tavares*, 603 So. 2d 18, 19 (Fla. 5th DCA 1992) (citation omitted). And Florida law permits a plaintiff to recover against a municipality for the actions of its employees based upon a theory of *respondeat superior*. *See* Fla. Stat. § 768.28; *see also Laster v. City of Tampa Police Dep't*, 575 F. App'x 869, 872 (11th Cir. 2014) (citations omitted). Here, Plaintiff brings her state-law false arrest claim against the City. (*See* Compl. ¶¶ 45–48).

False arrest is "the unlawful restraint of a person against that person's will." *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006) (citation omitted). For law enforcement personnel, this standard equates to an arrest in which "the officer does not have probable cause to believe [the suspect] has committed an offense." *Lester*, 603 So. 2d at 19 (alteration added; footnote call number omitted). Probable cause is an affirmative defense to a false arrest claim. *See Willingham*, 929 So. 2d at 48 (citation omitted).

The any-crime rule "insulates officers from false-arrest claims so long as probable cause existed to arrest the suspect for *some* crime, even if it was not the crime the officer thought or said had occurred." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (citation omitted; emphasis in original). And "[w]hen the facts are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate." *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990) (alteration added; citing *Wille v. Raymond*, 487 So. 2d 1211, 1214 (Fla. 4th

8

DCA 1986); other citation omitted)).

Here, much of the underlying encounter is not in dispute. All agree that the vehicle was towed to Whitt's at 11:28 a.m., and Plaintiff notified the Miami-Dade Police at 12:00 p.m. (*See* Pl.'s SOF ¶¶ 8, 12; Defs.' Resp. SOF ¶¶ 8 (disputed as phrased), 12 (disputed on other grounds)). It is also undisputed that the undercover Officer arrived at about 1:15 p.m., possessed the vehicle's keys, but did not present a rental agreement or identify the rental company. (*See* Pl.'s SOF ¶¶ 15–16, 19–20, 24–28, 30; Defs.' Resp. SOF ¶¶ 15–16, 19, 20 (disputed as phrased), 24–28, 30 (disputed as phrased)). The parties further agree that Plaintiff produced a tow manifest with at least two fields left blank, including the "towed to" location and the time service was requested; and Plaintiff ultimately did not agree to release the vehicle. (*See* Pl.'s SOF ¶¶ 37, 40, 44; Defs.' Resp. SOF ¶¶ 37, 40, 44; Defs.' SOF ¶¶ 54–57, 69, 75; Pl.'s Resp. SOF ¶¶ 54–57, 69, 75).

Defendants argue these undisputed facts furnished probable cause to arrest Plaintiff under both state and county law — pointing to three laws. (*See* Defs.' Mot. 6–9). Section 715.07(2)(a)(9) of the Florida Statutes provides that once a vehicle has been towed, it must be released to its owner or person in control "within 1 hour after requested[;]" refusal to do so is a third-degree felony. *See* Fla. Stat. § 715.07(2)(a)(1)(a) (alteration added). Miami-Dade County Tow Ordinance ("Tow Ordinance") section 30-468 prohibits any "person" from storing a towed vehicle without a complete manifest, including the time the tow was requested and the vehicle's destination. Tow Ordinance § 30-468. And finally, Tow Ordinance section 30-474(c) mandates that all tows be reported to police within 30 minutes. *See id.* § 30-474(c). Violations of the Tow Ordinance are misdemeanors punishable by up to 60 days in jail. *See id.* § 30-477(g).

The Court need not determine whether probable cause existed under each provision — just

9

one will do.[4] *See Williams*, 965 F.3d at 1158 (citation omitted). Here, Tow Ordinance section 30-468 suffices.

When Officers arrived at Whitt's, Plaintiff handed over a tow manifest missing at least two mandatory fields: the time the tow was requested and the vehicle's destination. (*See* Defs.' SOF ¶¶ 54–57, 69, 75; Pl.'s Resp. SOF ¶¶ 54–57, 69, 75). These omissions were visible on the face of the document and confirmed on body-worn camera footage. (*See* Defs.' SOF ¶¶ 57–58, 69; Pl.'s Resp. SOF ¶¶ 57–58, 69). Plaintiff acknowledged writing portions of the manifest, calling the tow in, and routinely handling these forms as part of her duties. (See Defs.' SOF ¶¶ 5, 8–9, 60–61; Pl.'s Resp. SOF ¶¶ 5, 8, 9 (disputed as phrased), 60–61; Pl.'s SOF ¶ 12; Defs.' Resp. SOF ¶ 12 (disputed on other grounds)). Under the circumstances, a prudent officer with this information could reasonably believe that Plaintiff, in her role at Whitt's, had committed a misdemeanor offense under the Tow Ordinance — providing sufficient probable cause to arrest Plaintiff. *See Turner v. Ochoa*, No. 24-10707, 2024 WL 4346516, at *4 (11th Cir. Sept. 30, 2024) ("An officer may arrest a person if he has probable cause to believe she has committed a misdemeanor[.]") (alteration added; citing *Lee v. Ferraro*, 284 F.3d 1188, 1194–95 (11th Cir. 2002)).

Plaintiff resists this conclusion, arguing that section 30-468 of the Tow Ordinance does not apply to her because it was her company that stored the towed vehicle, not her personally. (*See* Pl.'s Resp. 4–6). She further reasons she had no decision-making authority and merely followed her supervisor's instructions. (*See* Pl.'s SOF ¶¶ 4–5, 42, 52; Defs.' Resp. SOF ¶¶ 4, 5 (disputed), 42, 52 (disputed)). The Tow Ordinance, however, does not limit liability to managerial employees or owners of the tow company. Rather, it defines "person" broadly to include any natural person

---

[4] The Officers arrested Plaintiff based on a perceived violation of section 715.07(2)(a)(9) of the Florida Statutes. (*See* Defs.' SOF ¶ 83; Pl.'s Resp. SOF ¶ 83). But again, under the any-crime rule, the validity of the arrest does not hinge on that particular offense. *See Williams*, 965 F.3d at 1158 (citation omitted).

10

who stores or handles a towed vehicle. *See* Tow Ordinance § 30-461(19); *see also id.* § 30-461(25); *id.* § 30-468(a). Plaintiff was the *only* employee present in the office at the time, regularly interacted with police, and handled tow manifests as part of her daily responsibilities. (*See* Defs.' SOF ¶¶ 5–6, 8–9; Pl.'s Resp. SOF ¶¶ 5, 6 (disputed), 8, 9 (disputed as phrased)).

On this record, the Officers had reasonably trustworthy information to conclude that Plaintiff was subject to the Tow Ordinance and violated it, and thus had probable cause to arrest her. *See McRae v. Berger*, No. 205-cv-043, 2005 WL 2838145, at *3 (S.D. Ga. Oct. 26, 2005), *aff'd*, 173 F. App'x 758 (11th Cir. 2006) ("[T]he officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. In other words, it is sufficient if probable cause exists to believe that *any* crime was committed." (alteration added; citation and quotation marks omitted; emphasis in original)); *cf. Drudge v. City of Kissimmee*, 581 F. Supp. 2d 1176, 1191 (M.D. Fla. 2008) ("Courts have concluded that where a police officer reasonably *but mistakenly* construes a statute or ordinance in making an arrest, the arrest is not thereby rendered invalid." (emphasis added)).

**B. Count II – Section 1983 Claim (Against the Officers)**

In Count II, Plaintiff brings a claim under 42 U.S.C. section 1983 against the Officers, alleging her arrest violated her Fourth Amendment rights. (*See* Compl. ¶¶ 49–53). Specifically, Plaintiff asserts that she was arrested without probable cause and detained unlawfully. (*See id.* ¶ 51). Defendants claim Plaintiff's arrest was supported by probable cause based on her failure to comply with the Tow Ordinance. (*See* Defs.' Mot. 12). They further argue that, even if probable cause was lacking, the Officers are entitled to qualified immunity because they had at least arguable probable cause to believe Plaintiff had committed an offense. (*See id.* 12–18).

Although Plaintiff's Motion recites the general framework for analyzing qualified

11

immunity (*see id.* 3–5), it fails to apply that framework to the facts or cite any case law clearly establishing the constitutional right that she claims was violated (*see generally id.*). Her opposition brief fares no better — it omits any discussion of qualified immunity altogether. (*See generally* Pl.'s Resp.). Nonetheless, a party's silence is not ground, by itself, to grant summary judgment. *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). The Court must therefore assess the substance of the qualified immunity defense on Count II, notwithstanding Plaintiff's failure to address it.

As a threshold matter, Plaintiff concedes that the Officers were acting within the scope of their discretionary authority at all relevant times. (*See* Pl.'s Mot. 4). Thus, the Court proceeds to the second step of the qualified immunity analysis: whether Plaintiff has shown that the Officers violated a constitutional right that was clearly established at the time of the arrest.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV (alterations added). "Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances." *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018) (citation omitted). As relevant here, "[a] warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *Id.* (alteration added; citation omitted). Probable cause, in turn, "exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'" *Washington v. Howard*, 25 F.4th 891, 898–99 (11th Cir. 2022) (quoting *Wesby*, 583 U.S. at 57). Notably, "[p]robable cause does not require conclusive evidence and 'is not a high bar.'" *Id.* at 899 (alteration added; quoting *Wesby*, 583 U.S. at 57).

"While an officer who arrests an individual without probable cause violates the Fourth

Amendment, this does not inevitably remove the shield of qualified immunity." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). An officer is not automatically liable for making an arrest that, "when seen with the benefit of hindsight, turns out not to have been supported by probable cause." *Id.* Rather, in the section 1983 false arrest context, "an officer need not have actual probable cause, but only 'arguable' probable cause[]" to be entitled to qualified immunity. *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023) (alteration added; quotation marks and citation omitted). "[A]rguable probable cause exists where a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Edger v. McCabe*, 84 F.4th 1230, 1236–37 (11th Cir. 2023) (alteration added; quotation marks and citation omitted).

The Eleventh Circuit recently clarified that "the arguable probable cause inquiry in a false arrest case is no different from the clearly established law inquiry[.]" *Garcia*, 75 F.4th at 1187 (alteration added). In other words, if officers had arguable probable cause to arrest, "their violation of the law was not clearly established and vice-versa." *Edger*, 84 F.4th at 1236. This standard acknowledges "that law enforcement officers may make reasonable but mistaken judgments regarding probable cause[,]" but it "does not shield officers who *unreasonably* conclude that probable cause exists." *Skop*, 485 F.3d at 1137 (alteration added; emphasis in original).

Whether an officer had actual or arguable probable cause to arrest "depends on the elements of the alleged crime and the operative fact pattern." *Edger*, 84 F.4th at 1237 (quotation marks and citation omitted); *see also Skop*, 485 F.3d at 1137–38. "Probable cause for an arrest may be found if there is probable cause to believe any crime was committed, whether or not there is probable cause for the crime the arresting officer actually believed had been committed." *Manners v. Cannella*, 891 F.3d 959, 969 (11th Cir. 2018). Because probable cause is "a fluid concept" that

"deals with probabilities[,]" it must be assessed based on "the totality of the circumstances[.]" *Wesby*, 583 U.S. at 57 (alterations added; quotation marks and citation omitted).

Plaintiff contends her arrest violated the Fourth Amendment because it was not supported by probable cause. (*See* Pl.'s Mot. 11–15). But as discussed, the Officers had actual probable cause to arrest Plaintiff for violating the Tow Ordinance. This alone is sufficient to defeat the constitutional violation prong. *See Skop*, 485 F.3d at 1137.

In any event, the Officers certainly had *arguable* probable cause to arrest Plaintiff. *See Garcia*, 75 F.4th at 1186. It is undisputed that the tow manifest Plaintiff provided was missing at least two required fields — information the Tow Ordinance plainly requires. (*See* Defs.' SOF ¶¶ 54–57, 69; Pl.'s Resp. SOF ¶¶ 54–57, 69). Plaintiff's role included receiving the manifest, calling the tow into the police, and preparing the form for the customer's arrival; and she was the only employee in the office at the time. (*See* Defs.' SOF ¶¶ 5–6, 8–9; Pl.'s Resp. SOF ¶¶ 5, 6 (disputed), 8, 9 (disputed as phrased)). Even accepting Plaintiff's contention that she was simply following instructions (*see* Pl.'s SOF ¶ 52; Defs.' Resp. SOF ¶ 52 (disputed)), it was not clearly established that an arrest under these circumstances would violate the Fourth Amendment.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants, Christopher Johnson, Darien Rodriguez, Stephanie Fernandez, and City of South Miami, Florida's Motion for Summary Judgment **[ECF No. 34]** is **GRANTED**; and Plaintiff, Alexis Nicole Gonzalez's Motion for Partial Summary Judgment **[ECF No. 35]** is **DENIED**. Final judgment will issue by separate order. All other pending motions are denied as moot.

CASE NO. 24-22275-CIV-ALTONAGA/Reid

**DONE AND ORDERED** in Miami, Florida, this 29th day of May, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record